1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8
9   HAROLD WALKER,                              CASE NO. 1:09-cv-00931-YNP PC

10              Plaintiff,                      ORDER DISMISSING COMPLAINT, WITH
                                               LEAVE TO FILE AMENDED COMPLAINT
11        v.                                    WITHIN 30 DAYS

12   P. L. VAZQUEZ, et al.,                    (Doc. 1)

13              Defendants.
                                    /
14

15        Plaintiff Harold Walker ("Plaintiff") is a state prisoner proceeding pro se and in forma

16   pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is in the custody of the

17   California Department of Corrections and Rehabilitation and is incarcerated at Wasco State Prison

18   in Wasco, California.  Plaintiff is suing under section 1983 for the violation of his constitutional

19   rights.  Plaintiff names R. L. Vazquez, John/Jane Doe (deputy warden), M. Biter, C. Lawless, V.

20   Ramirez, John Doe (captain), R. Rivera, E. Sherman, R. Christensen, S. Hobbs, Bustos, K. W.

21   Healer, R. Kuhn, S. Spedell, A. Ortega, M. Palmer, J. Cooper, P. Kehoe, K. Crouch, A. Ayala, P.

22   Hernandez, Allala, Preist, M. K. Banuelos, F. Jones. J. Ayon, Y. Scott, Hensley, Castro, T. Counts,

23   J. St. Michael, J. Aguilar, R. Escalante, Stark, and Walker as defendants.[1]  For the reasons set forth

24   below, the Court finds that Plaintiff's complaint fails to state any cognizable claims.  Plaintiff's

25

26        [1]There are similar, but inconsistent spellings for certain defendants' names throughout Plaintiff's complaint.
    It is unclear whether Plaintiff is referring to the same defendant but with inconsistent spelling, or if Plaintiff is
27   referring to a distinct individuals with similarly spelled names.  For example, Plaintiff refers to a "Defendant
    Lieutenant R. River" on page 8 of his complaint, while naming a correctional lieutenant "R. Rivera" on page 3 of his
28   complaint.

complaint will be dismissed and Plaintiff will be granted leave to file an amended complaint that cures the deficiencies identified by the Court.

**I.    Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

**II.    Background**

On October 17, 2008, Plaintiff was harassed by Defendant A. Ayala. Ayala attempted to cuff Plaintiff's hands behind his back while Plaintiff attempted to explain that his hands must be cuffed

in front of his body because his injuries prevented him from putting his hands behind his back. Plaintiff has impaired mobility, uses a cane to walk, and wears a neck and lower back brace. Ayala became angry and screamed at Plaintiff to get his hands behind his back while attempting to force his hands behind his back. Defendant Burrows arrived and told Ayala that the mechanical restraints had to be placed in front of Plaintiff. Plaintiff was then restrained with his hands in front of his body and placed in a cage near the law library.

Plaintiff was then told that he would receive a rule violation report. Plaintiff replied that he had not done anything to deserve a rule violation report. Burrows then told Ayala to say that Plaintiff had a weapon. Defendant Ortega arrived later and asked Plaintiff what happened. Plaintiff told Ortega that Ayala had been disrespectful to him and tried to force Plaintiff's hands behind his back despite his injury. Ortega ignored Plaintiff and Plaintiff was left in his cage for approximately four hours. Plaintiff was then escorted to the administrative segregation building and placed in another cage. Plaintiff was told that he was being held for having possession of an inmate manufactured weapon. A rule violation report was made based on the false charges and signed by Ayala, Ortega, and Defendants E. Sherman and Christenser.

On November 11, 2008, Defendant Hernandez wrote an investigative report. Plaintiff complains that Hernandez failed to ask Plaintiff if he had any witnesses. On November 21, 2008, Defendant J. Aguilar served as senior hearing officer for Plaintiff's rule violation report. Plaintiff complains that Aguilar did not allow Plaintiff to call witnesses or present any statements or evidence. Aguilar also denied Plaintiff an opportunity to have an unbiased investigative employee gather and present witnesses. Plaintiff was found guilty of the rule violation report. The disposition was signed and approved by Defendants C. Lawless and M. Biter.

On January 15, 2009, Plaintiff was being held in administrative segregation due to the false rule violation report. Plaintiff had a medical appointment outside the prison for back treatment. Plaintiff complains that Defendant Alcala prevented Plaintiff from attending his medical appointment. Plaintiff told Alcala that he needed a wheelchair to get to his appointment. Alcala threatened Plaintiff by saying that he would call the hospital and tell them that Plaintiff refused to go to his appointment. Plaintiff then went to lay down on his bunk. Approximately an hour later,

Alcala and Defendant Preist arrived at Plaintiff's cell. Alcala attached a chain to Plaintiff's hand cuffs and Alcala and Preist began dragging Plaintiff off the bunk, causing Plaintiff to hit his head while falling on the floor. Alcala and Preist attempted to drag Plaintiff out of his cell but Plaintiff resisted. Alcala and Preist kicked Plaintiff on the floor before giving up and leaving Plaintiff on the floor of his cell.

Defendant Walker arrived at Plaintiff's cell and told Plaintiff that she had a new cane for Plaintiff. Plaintiff requested medical attention for the injuries he just sustained. Walker looked at Plaintiff and said "what am I supposed to do" and walked away. Three hours later, Alcala, Preist and Defendant Allala opened Plaintiff's cell and removed the chain. Plaintiff was again denied medical treatment.

On January 22, 2009, Plaintiff was being escorted from the law library. Alcala grabbed Plaintiff and pushed Plaintiff to the floor, causing pain to Plaintiff's neck and back. Plaintiff complains that Walker again refused to provide treatment. Plaintiff was picked up off the floor by Defendant M. Palmer and was dragged to his cell.

On February 4, 2009, Plaintiff was awakened from sleep by Defendant Banuelos, who was banging on the cell doors. Banuelos told Plaintiff that he was banging on the doors because some of the cells had their windows covered. Plaintiff complained that Banuelos was disturbing the inmates who did not have their windows covered and told Banuelos to just ask the inmates that had their windows covered to take them down. Banuelos then banged on Plaintiff's cell door and walked away. Plaintiff filed an appeal complaining about Banuelos' disrespectful behavior. Plaintiff's appeal was screened out by Defendant R. Escalante. Plaintiff re-filed the appeal but did not receive a response. Plaintiff claims that Banuelos then retaliated against Plaintiff by writing a false rule violation report accusing Plaintiff of "sexual disorderly conduct." The report was reviewed and signed by Defendants J. Cooper, and S. Hobbs. The report caused Plaintiff to be placed in administrative segregation for seven days.

On February 26, 2009, Defendant Jones was assigned to be Plaintiff's investigative officer. Plaintiff complains that Jones failed to seek out statements from witnesses on Plaintiff's behalf. On March 2, 2009, Plaintiff was interviewed by Defendant Dr. Stark for a "rule violation report: mental

health assessment request." Plaintiff complains that Stark made a "false report" that stated Plaintiff made statements that he did not make. On March 13, 2009, Defendant R. Rivera served as senior hearing officer at Plaintiff's rule violation hearing. Plaintiff complains that Rivera denied Plaintiff the right to present evidence and witnesses on his behalf.

On April 7, 2009, Defendant J. Ayon[2] used unnecessary and excessive force by using pepper spray on Plaintiff. The incident arose from an exchange between Plaintiff and some correctional officers. After a verbal exchange involving Plaintiff's request for the officers to remove his dinner tray, Plaintiff began yelling from his cell and kicking the door. Plaintiff informed the officers that he was feeling suicidal. The officers began to laugh and Defendant Ayon warned Plaintiff to stop kicking the door by saying "Keep it up, I got something for your ass." Plaintiff responded by stating "come give it to me." After retrieving the pepper spray, Defendant Ayon taunted Plaintiff by saying "kick the door again mother fucker." Plaintiff continued to kick the door and Ayon pepper sprayed Plaintiff. Plaintiff claims that Ayon received the pepper spray from Defendant Scott. Defendant Hensley and Castro did not stop Ayon, and were laughing and calling Plaintiff's name. On April 7, 2009, Defendants Bustos, Kehoe, Ayon, Hensley, and Scott wrote a false crime/incident report that accused Plaintiff of inciting a riot. On April 10, 2009, Ayon signed a false rule violation report, which was also reviewed and signed by Kehoe and Scott. Plaintiff claims Defendant K. W. Healer also accused Plaintiff of "behavior which could lead to violence resulting in the use of force." On April 7, 2009, Plaintiff requested to file a complaint against Ayon, Castro, and Hensley for excessive use of force, but was denied by Henderson, who accused Plaintiff of being the "creator" of the excessive use of force.

On April 11, 2009, Plaintiff was being escorted by Defendant Counts. Counts told Plaintiff to "get in your motherfucking cell." Plaintiff complained to Counts about his disrespectful language. Plaintiff was then put in mechanical restraints and was told that he would receive a rule violation report. While being escorted, Defendant St. Michael pushed and pulled Plaintiff to get Plaintiff to walk faster. Plaintiff complained that his injuries prevented him from walking any faster. Plaintiff

---

[2]Defendant Ayon appears to be referred to as "Ayrola" in the exhibits attached to Plaintiff's complaint.

1   was then pushed forcefully into the wall by Defendant St. Michael. Plaintiff was escorted out of the

2   building by Counts and St. Michael and was told to face the wall. Plaintiff was again pushed into

3   the wall, causing a cut on Plaintiff's head. Defendants Kuhn, Crouch, Counts, and St. Michael then

4   wrote a false crime/incident report that accused Plaintiff of resisting a peace officer. Plaintiff

5   received a rule violation report signed by St. Michael, Crouch, and Spedell.

6   **III.   Discussion**

7          Plaintiff fails to specify the legal theories for his claims. Plaintiff merely describes a number

8   of incidents in narrative fashion and vaguely concludes that Defendants violated his constitutional

9   and statutory rights. Plaintiff does not specify which constitutional rights or which statutes have

10  been implicated. The Court will provide Plaintiff with the substantive law that it believes is relevant

11  to Plaintiff's claims.

12         **A.     Eighth Amendment Claims**

13         Plaintiff describes a number of incidents where he was physically and verbally harassed by

14  Defendants. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and

15  "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'"

16  Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir.

17  1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1)

18  the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S.

19  825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective

20  requirement that the prison official has a "sufficiently culpable state of mind", Id. (quoting Wilson,

21  501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met

22  where the prison official's act or omission results in the denial of "the minimal civilized measure

23  of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective

24  requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison

25  official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S.

26  at 302-303). A prison official acts with deliberate indifference when he/she "knows of and

27  disregards an excessive risk to inmate health or safety". Id. at 837. "[T]he official must both be

28  ///

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

### 1.     Use of Excessive Force

Plaintiff alleges that he was physically harassed by correctional officers who attempted to force his hands behind his back to cause pain from his injuries, drag Plaintiff out of his cell using a chain, and shove  Plaintiff to the floor.  Where prison officials are accused of using excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-321 (1986)).  Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used and the extent of the injury inflicted.  Whitley, 475 U.S. at 321.  Other factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.  Id.  The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary."  Id. at 319. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Id. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

Plaintiff has not provided enough detail for the Court to determine whether Defendants' actions in forcing Plaintiff's hands behind his back, attempting to drag him out of his cell, and pushing Plaintiff around are sufficiently serious to constitute a violation of the Eighth Amendment. Plaintiff does not allege what injuries, if any, he sustained from Defendants' harassment.  In order to state a cognizable claim under the Eighth Amendment, Plaintiff must allege that he suffered physical injury that is more than de minimis.  See Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).  Plaintiff fails to state a claim against Defendants Ayala, Alcala, Preist, St. Michael, and Palmer for their use of force against Plaintiff.  Similarly, Plaintiff's allegation that Defendant

1  Banuelos disturbed his sleep by banging on the cell doors fails to rise to the level of an Eighth

2  Amendment violation.

3      Plaintiff alleges that Defendant Ayon used pepper spray on Plaintiff in an unnecessary and

4  excessive manner.  Defendant Ayon's actions were apparently in response to Plaintiff's willful

5  disobedience to Ayon's order to stop kicking the door to his cell.  Given the facts as alleged, there

6  appears to be a legitimate penological need for the application of force due to Plaintiff's failure to

7  obey Ayon's order.  Ayon's use of disrespectful language does not cause the incident to rise to the

8  level of an Eighth Amendment violation.  In order to state a claim under the Eighth Amendment,

9  Plaintiff must allege more facts that demonstrate that Defendant Ayon's response to Plaintiff's

10 disobedience was greatly out of proportion to the need for the use of force.  Plaintiff cannot state an

11 Eighth Amendment claim based on the allegation that in hindsight, there may have been a less

12 forceful method available.  Correctional officers are given "wide-ranging deference" for their

13 judgments regarding the need for the application of force.  Their judgments only rise to the level of

14 an Eighth Amendment violation where it is apparent that their judgment was made "maliciously and

15 sadistically to cause harm."  Plaintiff fails to state a claim against Defendant Ayon for violation of

16 the Eighth Amendment.  Plaintiff further fails to state a claim against Defendant Scott for providing

17 the pepper spray, or against Defendants Hensley and Castro for failing to prevent Ayon from using

18 the pepper spray.

19                    **2.    Denied/Delayed Medical Treatment**

20     Plaintiff alleges that he was denied medical treatment on a number of occasions.

21 "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under §

22 1983."  Estelle, 429 U.S. at 105.  In order to state an Eighth Amendment claim based on deficient

23 medical treatment, a plaintiff must show: (1) a serious medical need; and (2) a deliberately

24 indifferent response by the defendant.  Conn v. City of Reno, 572 F.3d 1047, 1055 (9th Cir. 2009)

25 (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).  A serious medical need is shown by

26 alleging that the failure to treat the plaintiff's condition could result in further significant injury, or

27 the unnecessary and wanton infliction of pain.  Id.  A deliberately indifferent response by the

28 defendant is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical

8

need and harm caused by the indifference. Id. In order to constitute deliberate indifference, there must be an objective risk of harm and the defendant must have subjective awareness of that harm. Id.

Plaintiff alleges that Defendants Alcala, Walker, Preist, and Allala ignored Plaintiff's medical needs by failing to provide treatment for his injuries or causing Plaintiff to miss medical appointments. However, Plaintiff fails to demonstrate that he had a serious medical need. Plaintiff does not describe what treatment he needed or allege what risk of further injury existed due to Defendants' failure to provide medical treatment. Plaintiff only vaguely alleges that he requested treatment from Defendants Walker, Alcala, Preist, and Allala after he was dragged by a chain in his cell. Plaintiff requested treatment from Walker after Alcala pushed Plaintiff to the ground, but was ignored. Defendant Alcala caused Plaintiff to miss a medical appointment for back treatment. However, Plaintiff fails to provide any details as to what treatment he needed from each incident, or allege what further injury or risk of further injury he was exposed to because his requests for treatment were denied. Thus, the Court is unable to determine whether Plaintiff's medical needs were sufficiently serious to constitute cruel and unusual punishment under the Eighth Amendment. Plaintiff fails to state any claims against Defendants Alcala, Walker, Preist, and Allala for deliberate indifference to his medical needs.

### 3.  Verbal Abuse

Plaintiff alleges that correctional officers verbally abused and disrespected him. Mere verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Plaintiff's allegations that Defendants Banuelos used disrespectful language against him fail to rise to the level of a constitutional violation.

### B.  Fourteenth Amendment Claims

Plaintiff alleges that Defendants gave Plaintiff false rule violation reports and ignored his administrative grievances. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty

interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

## 1.    Administrative Appeals

Plaintiff alleges that Defendant Escalante ignored Plaintiff's administrative appeal complaining about Defendant Banuelos' disrespectful behavior. Plaintiff also alleges that Defendant Henderson ignored Plaintiff's complaint that accused Defendants Ayon, Castro, and Hensley used excessive force against him. Inmates have no liberty interest in the processing of an inmate appeal because inmates lack a separate constitutional entitlement to a specific prison grievance procedure. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). The failure to timely process inmate appeals pursuant to state prison regulations is not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." There is no indication that the delay, denial, or screening-out of Plaintiff's inmate appeals, resulted in an "atypical and significant hardship". Plaintiff has no protected liberty interest in the vindication of his administrative claims. Plaintiff fails to state any claims against Defendants Escalante and Henderson for violation of the Fourteenth Amendment.

## 2.    False Rule Violation Reports

Plaintiff alleges that Defendants fabricated false rule violation reports and conducted unfair hearings for the rule violations. Plaintiff alleges that Defendants Burrows, Ayala, Ortega, Sherman, Christenser, Hernandez, Aguilar, Lawless, and Biter were involved in writing and hearing Plaintiff's rule violation report for possession of an inmate manufactured weapon. Plaintiff alleges that Defendants Banuelos, Cooper, Hobbs, Jones, Stark, and Rivera were involved in writing and hearing Plaintiff's rule violation report for sexual disorderly conduct. Plaintiff alleges that Defendants Bustos, Kehoe, Ayon, Hensley, Scott, and Healer fabricated a report accusing Plaintiff of inciting a riot. Plaintiff alleges that Defendants Counts, St. Michael, Kuhn, Crouch, and Spedell were involved in fabricating a false rule violation report accusing Plaintiff of resisting a peace officer.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

"When prison officials limit a prisoner's right to defend himself they must have a legitimate penological interest." Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense). The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." Ponte v. Real, 471 U.S. 491, 495 (1985); see also Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996); Koenig, 971 F.2d at 423; Zimmerlee v. Keeney, 831 F.2d 183, 187-88 (9th Cir. 1987)(per curiam).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." Hill, 472 U.S. at 455; see also Touissaint v. McCarthy, 926 F.2d 800, 802-03 (9th Cir. 1991); Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir. 1989); Jancsek, III v. Oregon bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987); see especially Burnsworth v. Gunderson, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrate existence of liberty interest.) "Some evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there

1  is <u>any</u> evidence in the record that could support the conclusion reached . . . ."  <u>Id</u>. at 455-56

2  (emphasis added).  However, the "some evidence" standard does not apply to where a prisoner

3  alleges the rules violation report is false and retaliatory.  <u>Hines v. Gomez</u>, 108 F.3d 265, 268-69 (9th

4  Cir. 1997).

5      Plaintiff has not alleged what injury, if any, he suffered as a result of the false rule violation

6  reports.  In other words, Plaintiff has not described what the consequences are for being found guilty

7  of a rule violation report.  The Due Process Clause of the constitution does not guarantee a general

8  right of being free from false accusations of misconduct.  Thus, Plaintiff has not demonstrated that

9  he suffered an "atypical and significant hardship."  In order to state a claim for violation of the Due

10  Process Clause, Plaintiff must demonstrate that he has suffered hardship that is significant enough

11  to trigger the procedural protections of the Fourteenth Amendment.  Plaintiff has not demonstrated

12  what hardship he has suffered.  Thus, Plaintiff fails to state any cognizable claims for violation of

13  the Due Process Clause with respect to the false rule violation reports he received.

14      Further, even if Plaintiff has a protected liberty interest in not being found guilty of rule

15  violation reports, Plaintiff must also allege what procedural protections he was deprived of in order

16  to state a claim under the Due Process Clause.  The Due Process Clause does not provide a free-

17  standing guarantee of being free from false charges.  The Due Process Clause guarantees certain

18  procedural protections to allow prisoners the opportunity to defend against false charges.  Thus, in

19  order to state a due process claim in the context of prison disciplinary hearings, Plaintiff must (1)

20  identify the protected liberty interest he was deprived of, and (2) allege how each defendant deprived

21  Plaintiff of one or more of the limited procedural protections set forth in <u>Wolff</u>.  Being falsely

22  accused of a rule violation does not violate due process so long as Plaintiff receives the limited

23  procedural protections described in <u>Wolff</u>.  Prison officials who file false charges against Plaintiff

24  do not violate the Due Process Clause unless they also cause Plaintiff to be denied the limited

25  procedural protections from <u>Wolff</u>.  Further, prison officials who find Plaintiff guilty of false rule

26  violations or approve dispositions from rule violation hearings do not violate the Due Process Clause

27  unless the is no evidence to support the disposition.  Even if the disposition is erroneous, the "some

28  ///

1   evidence" standard is relatively low and there is no due process violation if there is <u>any</u> evidence on

2   the record that supports the disposition.

3   **C.    Claims Against Other Defendants**

4   Plaintiff names a number of prison officials as defendants without providing factual

5   allegations that demonstrate how they deprived Plaintiff of any constitutional rights.  Plaintiff names

6   R. L. Vazquez, John/Jane Doe (deputy warden), and V. Ramirez as defendants without providing

7   factual allegations that link them to any constitutional violations or wrongdoing.  Plaintiff's sole

8   allegation against Defendant John Doe (captain) is that Plaintiff observed him and Defendant Ortega

9   walking toward building 2.  Plaintiff provides no further allegations as to what John Doe (captain)

10  did, thus the Court is unable to determine how he is connected with any alleged wrongdoing.

11  Plaintiff fails to state any claims against these defendants.

12  To the extent that Plaintiff is attempting to state claims against supervisory personnel,

13  Plaintiff is advised that Plaintiff cannot state a claim against them under section 1983 based solely

14  on the allegation that they hold supervisory positions over other prison officials who commit

15  constitutional violations.  Supervisory personnel are generally not liable under section 1983 for the

16  actions of their employees under a theory of <u>respondeat</u> <u>superior</u> and, therefore, when a named

17  defendant holds a supervisory position, the causal link between him and the claimed constitutional

18  violation must be specifically alleged.  <u>See</u> <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979);

19  <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978), <u>cert.</u> <u>denied</u>, 442 U.S. 941 (1979).  To state

20  a claim for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege

21  some facts that would support a claim that supervisory defendants either: personally participated in

22  the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent

23  them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation

24  of constitutional rights' and is 'the moving force of the constitutional violation.'"  <u>Hansen v. Black</u>,

25  885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); <u>Taylor v. List</u>, 880 F.2d 1040, 1045

26  (9th Cir. 1989).

27  ///

28  ///

1           **D.       Unrelated Claims**

2           Plaintiff's complaint asserts multiple claims against multiple defendants.  A basic lawsuit is

3    a single claim against a single defendant.  Federal Rule of Civil Procedure 18(a) allows a plaintiff

4    to add multiple claims to the lawsuit when they are against the same defendant.  Federal Rule of

5    Civil Procedure 20(a) allows a plaintiff to add multiple parties to a lawsuit where the right to relief

6    arises out of the same "transaction, occurrence, or series of transactions.  However, unrelated claims

7    that involve different defendants must be brought in separate lawsuits.  See George v. Smith, 507

8    F.3d 605, 607 (7th Cir. 2007).  This rule is not only intended to avoid confusion that arises out of

9    bloated lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and

10   prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act.[3]

11   28 U.S.C. § 1915(g).

12          Plaintiff's complaint describes multiple, unrelated events.  Plaintiff complains about an

13   incident in October 2008 when Plaintiff was harassed by Defendant Ayala and given a false rule

14   violation report.  The incident involved Defendants Ayala, Burrows, Ortega, Sherman, Christenser,

15   Hernandez, Aguilar, Lawless and Biter.  Plaintiff complains about an incident in January 2009 when

16   he was given another false rule violation report.  The incident involved Defendants Alcala, Preist,

17   Walker, and Allala.  Plaintiff complains about a second incident in January 2009 when he was

18   harassed by Defendants Alcala, Walker, and Palmer.  Plaintiff complains about being harassed again

19   in February 2009 and issued another false rule violation report.  The incident involved Defendants

20   Banuelos, Escalante, Cooper, Hobbs, Jones, Stark, and Rivera.  Plaintiff complains about an incident

21   in April 2009 when he was pepper sprayed.  The incident involved Defendants Ayon, Scott, Hensley,

22   Castro, Bustos, Kehoe, Healer, and Henderson.  Finally, Plaintiff complains about another incident

23   in April 2009 when he was harassed.  The incident involved Defendants Counts, St. Michael, Kuhn,

24   Crouch, and Spedell.

25          Plaintiff's complaint describes unrelated incidents that do not arise out of the same

26   "transaction, occurrence, or series of transactions."  These unrelated incidents involve different

27

28          [3]The Prison Litigation Reform Act allows prisoners to file complaints without prepayment of the filing fee
     unless they have previously filed three frivolous suits as a prisoner.  28 U.S.C. §1915(a),(g).

groups of defendants.  Plaintiff may not join all of the claims arising from these unrelated incidents in a single lawsuit.  As an example, the October 2008 incident involving Defendants Ayala, Burrows, Ortega, Sherman, Christenser, Hernandez, Aguilar, Lawless, and Biter may not be brought in the same lawsuit as the January 2009 incident involving Defendants Alcala, Preist, Walker, and Allala. The incidents occurred on different days, are not factually related to each other in any significant way, and involve entirely separate sets of defendants.  Plaintiff must present his claims arising out of those incidents in separate lawsuits.  If Plaintiff opts to file an amended complaint, he may only join claims together in a single complaint as permissible under the Federal Rules of Civil Procedure. Any further attempt to present unrelated claims against different defendants in a single lawsuit will result in the impermissibly joined claims being dismissed.

### E.   Use of Exhibits

Plaintiff has attached approximately 97 pages of exhibits to his complaint.  While exhibits are permissible if incorporated by reference, Fed. R. Civ. P. 10©, they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  Plaintiff is advised that under Rule 8 of the Federal Rules of Civil Procedure, Plaintiff is only obligated to provide "a short and plain statement of [his] claim", Plaintiff is not obligated to prove the allegations in his complaint at this stage. Attaching a large number of exhibits to a complaint will result in the complaint being dismissed for failure to comply with Federal Rule of Civil Procedure 8, as it will render the complaint to be neither a "short" nor "plain" statement of Plaintiff's claims.

In addition, Plaintiff may not attach exhibits to his complaint for the purpose of using them as evidence at later stages in litigation.  This court will not serve as a storehouse for Plaintiff's evidence.  Evidence should not be submitted to the court until this action reaches an appropriate stage in litigation for the submission of evidence, such as in response to a motion for summary judgment, at trial, or when specifically requested by the court.  Further, if and when this action does reach an appropriate stage in litigation for the submission of evidence, Plaintiff will not be able to refer to exhibits attached to his complaint as evidence.  Evidence must be submitted at the proper time and under the proper procedures.  Attaching exhibits to the complaint is not the proper procedure for admitting evidence for the purpose of proving Plaintiff's allegations.

1    **IV.   Conclusion and Order**

2          The Court has screened Plaintiff's complaint and finds that it does not state any claims upon

3    which relief may be granted under section 1983.   The Court will provide Plaintiff with the

4    opportunity to file an amended complaint curing the deficiencies identified by the court in this order.

5    Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).   Plaintiff is cautioned that he may not add

6    unrelated claims involving different defendants in his amended complaint.   George v. Smith, 507

7    F.3d 605, 607 (7th Cir. 2007).

8          If Plaintiff opts to amend, his amended complaint should be brief.   Fed. R. Civ. P. 8(a).

9    Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's

10   constitutional or other federal rights: "The inquiry into causation must be individualized and focus

11   on the duties and responsibilities of each individual defendant whose acts or omissions are alleged

12   to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

13   With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10©,

14   they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).   In other words,

15   it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint

16   because at this stage Plaintiff's factual allegations will be accepted as true.

17         However, although Plaintiff's factual allegations will be accepted as true and that "the

18   pleading standard Rule 8 announces does not require 'detailed factual allegations'", "a complaint

19   must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

20   its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). (quoting Bell Atlantic Corp. v. Twombly,

21   550 U.S. 544, 555 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content

22   that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

23   alleged." Id. (citing Twombly, 550 U.S. at 556).

24         Finally, Plaintiff is advised that an amended complaint supercedes the original complaint,

25   Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567

26   (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded

27   pleading," Local Rule 15-220.   Plaintiff is warned that "[a]ll causes of action alleged in an original

28   complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing

London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.  In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Accordingly, based on the foregoing, it is HEREBY ORDERED that:

1.    Plaintiff's complaint is dismissed, with leave to amend, for failure to state a claim;

2.    The Clerk's Office shall send Plaintiff a complaint form;

3.    Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint;

4.    Plaintiff may not add any new, unrelated claims to this action via his amended complaint and any attempt to do so will result in an order striking the amended complaint; and

5.    If Plaintiff fails to file an amended complaint, the Court will recommend that this action be dismissed, with prejudice, for failure to state a claim.


IT IS SO ORDERED.

**Dated:   December 16, 2009**            **/s/ Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE